UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

KIRK SMITH,

    Plaintiff,

    v.

LAX, LLC d/b/a LAND AIR EXPRESS,

    Defendant.

Civil Action No.

COMPLAINT
JURY TRIAL REQUESTED
INJUNCTIVE RELIEF REQUESTED

NOW COMES the Plaintiff, Kirk Smith ("Mr. Smith"), by and through undersigned counsel, and complains against the Defendant, LAX, LLC d/b/a Land Air Express as follows:

JURISDICTION AND PARTIES

1. This action arises under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et seq*., the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq,* the Maine Human Rights Act ("MHRA"), 5 M.R.S. §§ 4551 *et seq.,* and the Maine Family Medical Leave Requirement Act ("MFMLR"), 26 M.R.S. §§ 844 *et seq.*

2. Mr. Smith is a United States citizen residing in the Town of Old Orchard Beach, County of York, State of Maine.

3. LAX is a New Hampshire limited liability company with a principal place of business in the City of Williston, State of Vermont.

4. Defendant is registered to do business in the State of Maine.

1

5. Defendant had 300 or more employees for each working day in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

6. Defendant had 50 or more employees working within 75 miles of the Scarborough terminal where Mr. Smith worked in each of 20 or more calendar weeks in the same calendar year as when the alleged discrimination occurred.

7. Defendant employed more than fifteen employees at the Scarborough terminal at all times material to this Complaint.

8. Mr. Smith worked more than 1250 hours in the twelve months preceding his use of intermittent leave to care for his wife.

9. The amount in controversy in this case exceeds $75,000.00.

10. This Court has subject matter jurisdiction over Mr. Smith's federal and state claims pursuant to 28 U.S.C. §§ 1331, 1332, and 1367.

11. In January 2020, Mr. Smith filed a timely Charge of Discrimination against Defendant alleging unlawful age and disability discrimination with the Maine Human Rights Commission ("MHRC") and Equal Employment Opportunity Commission ("EEOC").

12. On or about March 9, 2021, the MHRC issued a Notice of Right to Sue with respect to Mr. Smith's state law claims under the MHRA.

13. On or about March 15, 2021, the EEOC issued a Notice of Right to Sue with respect to Mr. Smith's federal law claims under the ADA and the ADEA.

14. Mr. Smith has exhausted his administrative remedies with respect to all claims that require administrative exhaustion set forth in this Complaint.

## JURY TRIAL REQUESTED

15. Mr. Smith requests a trial by jury for all claims and issues for which a jury is permitted.

## FACTUAL ALLEGATIONS

16. Defendant is a transportation/logistics company.

17. Defendant has ten terminals in Massachusetts, Vermont, New Hampshire, Maine, and New York.

18. Mr. Smith worked for Defendant beginning in May 1991.

19. Mr. Smith started out working as a driver in 1991 making $7 per hour.

20. Mr. Smith initially worked out of the Windsor, VT terminal.

21. Later, Mr. Smith worked out of the Williston, VT terminal.

22. In 1995, Defendant opened a terminal in Scarborough, ME and Mr. Smith went to work there as a driver.

23. At different times between about 1996 and about 2005, Mr. Smith worked as a driver or an outbound supervisor and dispatcher.

24. In about 2005, Mr. Smith was promoted to Terminal Manager.

25. Terminal Manager was Mr. Smith's job title at the time he was wrongfully terminated on October 9, 2019.

26. Mr. Smith's final salary was $83,500.

27. For about one year prior to his termination, Mr. Smith reported to Director of Operations, Jason Hemenway.

28. September 17, 2019 was Mr. Smith's 61st birthday.

29. On Monday, September 30, 2019, Mr. Smith sent a text message to Mr. Spencer and Mr. Hemenway, letting them know that his wife was diagnosed with terminal cancer.

30. Mr. Hemenway called Mr. Smith immediately to express sympathy. He told Mr. Smith to take whatever time he needed to support and care for his wife.

31. Mr. Spencer responded to Mr. Smith's text and was supportive and compassionate.

32. Mr. Hemenway told another manager, Milton Brill, that Mr. Smith's wife had terminal cancer.

33. Mr. Hemenway was also involved in multiple conversations with other managers, including conference calls with high level managers, where there was discussion of Mr. Smith and his wife's cancer.

34. During Mr. Hemenway's conversations with Mr. Brill and other managers regarding Mr. Smith and his wife's cancer, there was discussion of the fact that Mr. Smith may need some time away from work to care for her.

35. All of Mr. Hemenway's conversations with other managers regarding Mr. Smith and his wife's cancer occurred before Mr. Hemenway went out on a previously scheduled vacation that began on October 7, 2019.

36. Mr. Smith continued to perform his job, as usual, after informing his managers of his wife's terminal cancer diagnosis.

37. Mr. Smith took an hour or two off on a couple of days to care for his wife and take her for medical treatments.

38. On Wednesday, October 9, 2019, Mr. Smith was called into a meeting with Mr. Brill and Greg Sobczak and was fired.

39. Mr. Smith knew Mr. Sobczak as the Terminal Manager from Boston, MA but did not know what his job title was as of October 9, 2019.

40. Mr. Sobczak's LinkedIn profile indicates that he is the East Region Director and Defendant indicated during the MHRC investigation that his job title is Regional Director of Operations.

41. Mr. Sobczak was at the meeting as a witness.

42. Mr. Smith had never met Mr. Brill before and did not know his job title.

43. On or about May 1, 2020, Defendant provided a written response to Mr. Smith's Charge of Discrimination.

44. In its May 1, 2020 Submission to the MHRC, Defendant stated that at the time he fired Mr. Smith, Mr. Brill was the "soon-to-be named …Vice President of Operations".

45. Mr. Brill told Mr. Smith that he was "no longer needed" and that he "did not fit in" to Defendant's future plans.

46. The "Termination of Employment" form that Mr. Smith was shown stated that Mr. Smith was fired due to "performance."

47. Mr. Smith was caught by complete surprise when he was fired.

48. Mr. Smith performed his job well and had never been warned about his performance or told that his job was in jeopardy.

49. Mr. Smith's terminal was in good shape. It was one of the top performing terminals in the business in terms of on-time deliveries, labor to revenue ratio, and other measurable performance indicators which were the measures used by the Defendant to evaluate terminal performance.

50. With regard to staffing, Mr. Smith's terminal would be called upon to loan drivers to other terminals to assist them in the context of their understaffing issues.

51. Mr. Brill played a significant role in the decision-making process that led to Mr. Smith's termination.

52. Mr. Brill claims that in the weeks leading up to Mr. Smith's termination, Mr. Brill tried to meet with Mr. Smith and tried to reach him by phone but could not reach him.

53. This claim by Mr. Brill is false. He made no efforts to reach Mr. Smith.

54. In addition, Mr. Smith was always available by cell phone and took calls placed to his cell phone.

55. Mr. Brill also claims that approximately two weeks before Mr. Smith's termination, Mr. Brill travelled to the Scarborough terminal in person, Mr. Smith was not there, Mr. Brill waited at the terminal for four hours, and Mr. Smith did not show up.

56. These claims by Mr. Brill are also false. Mr. Smith was present for his shifts at the terminal and there were no instances when Mr. Brill appeared at the terminal or when Mr. Smith was informed by others that Mr. Brill had appeared at the terminal.

57. Mr. Brill also claims that when he visited the terminal, he noticed a number of issues with the terminal.

58. Mr. Brill's claims regarding an inspection and those things he allegedly noticed during an inspection are false and misleading.

59. Defendant claims that CEO William Keresey and CFO Salvatore Constantino made the decision to terminate Mr. Smith.

60. During a MHRC conference, Mr. Keresey testified that his role in the decision to terminate Mr. Smith was very limited and that he was provided with a list of names for termination and Mr. Smith's name was on that list.

61. During a MHRC conference, Mr. Constantino indicated that the decision to terminate Mr. Smith was based on information from Mr. Brill regarding Mr. Smith and the Scarborough terminal, as well as concerns on the part of Mr. Constantino and Mr. Keresey that Mr. Smith would not be willing to cooperate with them to turn around the company and do some things differently.

62. Regarding the information from Mr. Brill, Mr. Constantino claims that Mr. Brill told them that Mr. Brill was unable to see or speak to Mr. Smith despite efforts to do so and that this concerned Mr. Constantino and Mr. Keresey because they did not see how they were going to turn around the operations if they could not even communicate with him.

63. Mr. Brill made false statements to Mr. Constantino regarding Mr. Smith and these false statements proximately caused Mr. Smith's termination.

64. Regarding Mr. Constantino's stated concerns that Mr. Smith would not be willing to cooperate with them to turn around the company and do some things differently, it is worth noting that neither Mr. Constantino, nor Mr. Keresey, nor Mr. Brill, nor anyone else ever speak to Mr. Smith about his willingness to cooperate with their plans to make changes to the Defendant's operations. If they had talked to Mr. Smith about his willingness to work with them to implement changes, he would have told them that he would absolutely work with them in this regard.

65. Mr. Constantino either knew that his alleged concerns were false or alternatively, if he believed these things, they were based on unfounded ageist biases that Mr. Smith would be unable or unwilling to adapt and change due to his age.

66. Therefore, the stated reasons for selecting Mr. Smith for termination are pretexts and also reflect that the decision was tainted by Mr. Brill's subordinate bias.

67. Mr. Smith's job duties were reassigned to HS[1], who is about 30 years old, and managed the Pittsfield Terminal.

68. The roster provided by Defendant to the MHRC shows that only two other terminal managers were fired and they were both close in age to Mr. Smith – he was 61 and they were in their late 50s (S.O., age 59, Albany Terminal, fired on 9/23/19, and P.K., age 56, Buffalo Terminal, fired on 1/28/20).

69. The Terminal Managers who remained employed were all, upon information and belief, in their 30s and 40s.

70. During the MHRC investigation, the Defendant was repeatedly asked to provide documentation and information reflecting the ages of the Terminal Managers that were retained when Mr. Smith was terminated and Defendant was unable or unwilling to do so.

71. Similarly, during the MHRC investigation, the Defendant was repeatedly asked to provide documentation and information reflecting the performance of the Scarborough terminal and other terminals including documentation reflecting on-time deliveries; labor to revenue ratio; damages claims; TPG scores; weekly reports; and other measurable performance indicators and was unable or unwilling to do so.

---

[1] The names of coworkers have been redacted to protect privacy.

72. In Defendant's May 1, 2020 Response to the MHRC, it denies that Mr. Brill, Mr. Keresey, or Mr. Constantino were aware of the fact that Mr. Smith's wife had received a terminal cancer diagnosis.

73. This claim is false and is evidence of pretext and an effort to dissemble the facts to cover up the fact that but for Mr. Smith's disclosure of his wife's terminal cancer diagnosis, he would not have been terminated.

74. Mr. Smith's wife had a disability. Her cancer was a per se disability under the MHRA, it significantly impaired her health, and substantially limited her in major life activities including working and caring for herself.

75. In addition, Mr. Smith's wife had a record of disability and was regarded by Defendant's managers as having a disability.

76. Defendant's managers viewed Mr. Smith differently because of his association with his wife, a person with a disability.

77. Mr. Smith's wife also had a serious health condition for purposes of the leave laws.

78. Defendant's managers assumed, incorrectly, that Mr. Smith would miss substantial time from work and that his work performance would suffer because his time and attention would be focused on his wife.

79. Mr. Brill was in the process of becoming the VP of Operations at the time of Mr. Smith's termination and was motivated to take steps to effectuate Mr. Smith's termination based on incorrect assumptions that Mr. Smith's attendance and performance would suffer as a result of his wife's disability.

80. Mr. Brill's discriminatory animus on the basis of Mr. Smith's association with a person with a disability was a proximate cause of Mr. Smith's termination.

81. On information and belief, Mr. Constantino and Mr. Keresey were also aware of Mr. Smith's wife's disability and Mr. Smith's association with a person with a disability was a but for cause of their decision to terminate his employment.

82. Defendant's disability discrimination is evidenced by the timing of the termination, the pretexts provided by Defendant to justify the termination, and the fact that Defendant falsely denies that its managers were aware of Mr. Smith's wife's disability.

83. Mr. Smith's age was also a but for cause of his termination.

84. Defendant's age discrimination is evidenced by the pretexts provided by Defendant to justify the termination, the evidence that other older Terminal Managers were terminated while younger Terminal Managers were retained, and a statement by Mr. Constantino reflecting that unfounded ageist stereotypes were a factor in the termination decision that made a difference.

85. Mr. Smith exercised his right to take some limited intermittent medical leave leading up to his termination.

86. The decision makers were aware that Mr. Smith had used and would in the future use some intermittent leave to care for his wife.

87. Mr. Smith's use of intermittent medical leave was protected by the FMLA and FMLR.

88. In addition, Defendant anticipated that Mr. Smith would use additional protected medical leave to take care of his wife.

89. Plaintiff's past use and anticipated future use of protected medical leave was also a but for cause of his termination as evidenced by the probative timing and evidence of pretext and dishonesty on the part of the Defendant.

90. Defendant knowingly and willfully violated Mr. Smith's rights under the ADA, ADEA, MHRA, FMLA and MFMLR.

91. Defendant unlawfully discriminated against Mr. Smith with knowing and reckless indifference to his rights and also with malice.

92. The timing of Defendant's termination of Mr. Smith was horrible. Mr. Smith was terminated during the same period that he was supporting his wife through her end of life process.

93. As a result of the termination, Mr. Smith lost his income and also became responsible for paying both his own share and his employer's share of medical insurance for Mr. Smith and his wife. At the same time that he lost his income, Mr. Smith needed to come up with over $18,000 to pay for medical insurance.

94. Mr. Smith's wife's medical costs were substantial during this time and so it was not an option to allow the insurance to lapse.

95. Mr. Smith diligently sought other employment but was not able to secure another job until December 1, 2020. Therefore, Mr. Smith was unemployed for a period of almost fourteen months.

96. In order to cover the health insurance and living expenses, Mr. Smith needed to take money from his retirement account. Therefore, rather than continuing to contribute to his retirement during this time, he was forced to take out funds.

97. The position that Mr. Smith secured in December 2020 provided less than half of the salary and benefits he earned from Defendant.

98. As a result of Defendant's unlawful discrimination against Mr. Smith, he has suffered lost wages, lost benefits, loss of enjoyment of life, loss of self-esteem, injury to reputation, injury to career, anxiety, humiliation, and other pecuniary and non-pecuniary losses.

99. Mr. Smith has no plain, adequate, or complete remedy at law to fully redress the wrongs alleged, and he will continue to suffer irreparable injury from his treatment by Defendant unless and until Defendant is enjoined by this court.

## COUNT I: ADEA

100. Paragraphs 1-99 are incorporated by reference.

101. Plaintiff was 61 years old at the time of these events.

102. Plaintiff was qualified for his job as Terminal Manager.

103. Plaintiff was discharged because of his age.

104. Defendant's conduct violates the ADEA.

## COUNT II: ADA

105. Paragraphs 1-104 are incorporated by reference.

106. Plaintiff's wife had a disability at the time of these events.

107. Plaintiff was qualified for his job as Terminal Manager.

108. Plaintiff was discharged because of his association or relationship with his wife.

109. Defendant's conduct violates the ADA.

## COUNT III: FMLA

110. Paragraphs 1-109 are incorporated by reference.

111. Plaintiff requested and needed intermittent leave to care for his wife who had a serious medical condition at the time of these events.

112. Plaintiff exercised his right to take a minimal amount of leave.

113. Defendant anticipated that Plaintiff would require additional leave in the future in connection with care for his wife.

114. Plaintiff was discharged because of his past and anticipated future use of medical leave.

115. Defendant interfered with, restrained, and denied Plaintiff the right to take medical leave to care for his wife by terminating his employment.

116. Defendant's conduct violates the FMLA.

### COUNT IV: MHRA (AGE AND DISABILITY)

117. Paragraphs 1-116 are incorporated by reference.

118. Plaintiff was 61 years old at the time of these events.

119. Plaintiff was qualified for his job as Terminal Manager.

120. Plaintiff's wife had a disability at the time of these events.

121. Plaintiff was discharged because of his association or relationship with his wife.

122. Plaintiff was discharged because of his age.

123. Defendant's conduct violates the MHRA.

### COUNT V: FMLR

124. Paragraphs 1-123 are incorporated by reference.

125. Plaintiff requested and needed intermittent leave to care for his wife who had a serious medical condition at the time of these events.

126. Plaintiff exercised his right to take a minimal amount of leave.

127. Defendant anticipated that Plaintiff would require additional leave in the future in connection with care for his wife.

128. Plaintiff was discharged because of his past and anticipated future use of medical leave.

129. Defendant interfered with, restrained, and denied Plaintiff the right to take medical leave to care for his wife by terminating his employment.

130. Defendant's conduct violates the FMLR.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that the Court grant the following relief:

A. Declare the conduct engaged in by Defendant to be in violation of his rights;

B. Enjoin Defendant, its agents, successors, employees, and those acting in concert with it from continuing to violate his rights;

C. Order Defendant to reinstate Plaintiff or award front pay to Plaintiff;

D. Award lost future earnings to compensate Plaintiff for the diminution in expected earnings caused by Defendant's discrimination;

E. Award equitable-relief for back pay, benefits and prejudgment interest;

F. Award compensatory damages in an amount to be determined at trial;

G. Award punitive damages in an amount to be determined at trial;

H. Award liquidated damages in an amount to be determined at trial;

I. Award nominal damages;

J. Award attorney's fees, including legal expenses, and costs;

K. Award prejudgment interest;

L.       Permanently enjoin Defendant from engaging in any employment practices which discriminate on the basis of age, disability or family medical leave;

M.      Require Defendant to mail a letter to all employees notifying them of the verdict against them and stating that Defendant will not tolerate discrimination in the future;

N.      Require that Defendant post a notice in all of its workplaces of the verdict and a copy of the Court's order for injunctive relief;

O.      Require that Defendant train all management level employees on the protections afforded by the ADEA, ADA, MHRA, FMLA, and FMLR;

P.       Require that Defendant place a document in Plaintiff's personnel file which explains that Defendant unlawfully terminated him because of age, disability, and family medical leave discrimination; and

Q.      Grant to Plaintiff such other and further relief as may be just and proper.

Dated: March 25, 2021

*/s/* Chad T. Hansen
Chad T. Hansen
Attorney for the Plaintiff

EMPLOYEE RIGHTS GROUP
92 Exchange Street 2nd floor
Portland, Maine 04101
Tel. (207) 874-0905
Fax (207) 874-0343
chad@employeerightslaw.attorney